COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Friedman and White
Argued at Christiansburg, Virginia


JESSI RYAN HACKETT

                                                   MEMORANDUM OPINION[*] BY
v.       Record No. 1919-22-3           JUDGE ROBERT J. HUMPHREYS
                                                    DECEMBER 5, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Michael R. Doucette, Judge

Michelle C.F. Derrico, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Sheri H. Kelly, Assistant Attorney General (Jason S. Miyares,
Attorney General; Collin C. Crookenden, Assistant Attorney
General, on brief), for appellee.


The circuit court convicted Jessi Ryan Hackett of assault and battery of a household

member, third or subsequent offense, and sentenced him to five years' incarceration with four years

suspended.  On appeal, Hackett challenges the sufficiency of the evidence to prove that the victim

"was a family or household member."

BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the

sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the

Commonwealth, the prevailing party in the trial court.'"  *Hammer v. Commonwealth*, 74

Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  This

standard "requires us to 'discard the evidence of the accused in conflict with that of the

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Between February 2020 and February 2022, Michelle Dupris and Hackett were in an "on again off again romantic relationship." Dupris testified that she would "break up" with Hackett but then they would "start talking again." They "lived together" between February 2021 and February 2022, but by February 14, 2022, they were "fighting a whole lot" and generally lived separately with their respective family or friends because neither had a stable residence.

Hackett and Dupris intended to go on a date on February 14, 2022. They discussed renting an "Airbnb," but Hackett decided they would stay the night at a friend's apartment to save money. It was evening when they arrived at the apartment, and Dupris did not "want to be there," so she told him to remove his belongings from her car so she could leave. Hackett implored Dupris to stay with him because it was Valentine's Day and he wanted a "nice" evening.

Dupris initially agreed to stay but "had a bad vibe" when she entered the apartment and immediately backed towards the door because she wanted to leave. After Dupris left the apartment, Hackett followed her and insisted that she stay. He then grabbed Dupris and pulled her toward the apartment, but she escaped his grasp and fled. Hackett pursued and caught Dupris, carried her back toward the car, and placed her in the back seat, overcoming her efforts to "get away." He then pushed his hands against her throat to stifle her screams.

After the attack ceased, Hackett took Dupris's phone and walked to the apartment door and Dupris locked herself in the car with the keys. Hackett returned to the car and tried to break the window, but Dupris drove away. Half a block later, she asked a stranger to call the police. Officer Johnson responded to the call and took a photograph of a red mark on Dupris's neck.

At trial, Hackett testified that he had tried to "plan something" with Dupris for Valentine's Day. Hackett claimed that after Dupris decided to leave the apartment, he walked outside to retrieve his belongings from her car, but she was already driving away. Hackett denied any "physical confrontation" with Dupris.

After the close of the evidence, Hackett moved to strike, arguing that the evidence failed to demonstrate that Dupris was a "family or household member" under Code § 16.1-228. The circuit court denied the motion. After further argument by counsel, the circuit court convicted Hackett of assault and battery of a family or household member, third or subsequent offense.

On appeal, Hackett argues that the evidence failed to prove that Dupris was a family or household member because she had not cohabited with Hackett. Hackett contends that the evidence failed to demonstrate the "essential elements" of cohabitation, including sharing of familial or financial responsibilities and consortium. He also emphasizes the discontinuity in his relationship with Dupris and argues that the evidence merely demonstrated that they lived together for an "indeterminate amount of time" and under indeterminate circumstances. Thus, Hackett concludes that there was "no evidence" of cohabitation and his conviction must be reversed.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have

- 3 -

found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Lucas v. Commonwealth*, 75 Va. App. 334, 342 (2022) (quoting *McGowan*, 72 Va. App. at 521).

A person convicted of assault and battery of a household or family member, third or subsequent offense within 20 years, and with each offense occurring on a different date, is guilty of a Class 6 felony. Code § 18.2-57.2(B). Code § 18.2-57.2(D) incorporates the definition of "family or household member" specified in Code § 16.1-228. In relevant part, that definition provides that "any individual who cohabits or who, within the previous 12 months, cohabited with the person" is a "[f]amily or household member." Code § 16.1-228.

"'[C]ohabitation' takes on different meanings in different contexts." *Rickman v. Commonwealth*, 33 Va. App. 550, 556 (2000) (quoting *State v. Yaden*, 692 N.E.2d 1097, 1100 (Ohio Ct. App. 1997)). In the domestic abuse context, we have held that cohabitation includes "sharing of familial or financial responsibilities" and "consortium." *Id.* at 557 (quoting *State v. Williams*, 683 N.E.2d 1126, 1130 (Ohio 1997)). "*Possible* factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets." *Id.* (emphasis added) (quoting *Williams*, 683 N.E.2d at 1130). In addition, "[f]actors that *might* establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations." *Id.* (emphasis added) (quoting *Williams*, 683 N.E.2d at 1130). "Other factors appropriate for consideration include the length and continuity of the relationship." *Id.*

It is well-established, however, that the factors to be applied in this analysis "are unique to each case and how much weight, *if any*, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." *Id.* (quoting *Williams*, 683 N.E.2d at 1130). In other words, the factors enunciated in *Rickman* are neither binding nor exclusive; they merely provide guidance in assessing the nature of the relationship between the abuser and the victim. The circuit court may consider other factors in assessing the "totality-of-the-circumstances" to determine whether the victim of the assault and battery and the defendant "cohabited," "as that term is used in Code § 18.2-57.2." *Id.* at 558.

The record demonstrates that Hackett and Dupris were in a two-year "romantic relationship" between February 2020 and February 2022. The relationship faltered but persisted, and Hackett and Dupris "lived together" between February 2021 and February 2022. Thus, the record demonstrates that Hackett and Dupris had shared living arrangements and were in a long-term romantic relationship, wherein they cooperated with each other and provided each other society, friendship, and, viewed in the light most favorable to the Commonwealth, conjugal relations. *See Rickman*, 33 Va. App. at 558 (finding that the evidence demonstrated consortium when the defendant "slept in the same bed" as the victim even though the defendant "insisted their relationship was platonic").

Hackett emphasizes the discontinuity and tension in his relationship with Dupris, including the occasions they "broke up" between February 2020 and February 2022. Nevertheless, those circumstances do not compel reversal in this case. In *Rickman*, we affirmed that the victim was a family or household member when she had resided with the defendant for only three months and he had "stayed with her sporadically before that for 'a long time.'" 33 Va. App. at 558. We held that the fact that the defendant, who was married to another woman, "sometimes worked out of town and may periodically have stayed elsewhere when in town did

- 5 -

not preclude a finding that he cohabited with [the victim]." *Id.* at 559. It is well-established that an abuser "cannot immunize himself from criminal liability" under Code § 18.2-57.2(B) merely because he maintains two domiciles; he cohabits with the victim even if he "lives part-time elsewhere" if he "continu[es] to reside the rest of the time with the [victim] and maintain[s] a substantial relationship with [her]." *Id.* at 557 (quoting *People v. Moore*, 52 Cal. Rptr. 2d 256, 264 (Cal. Dist. Ct. App. 1996)).

The tumultuous nature of Hackett and Dupris's relationship did not preclude a finding that they cohabited with each other during the 12 months preceding the offense. Indeed, the record demonstrates that Hackett and Dupris maintained a two-year romantic relationship, which included living together between February 2021 and February 2022 and planning an overnight date on Valentine's Day 2022. Under a totality of the circumstances analysis, those circumstances provided sufficient evidence to support the circuit court's conclusion that the relationship between Dupris and Hackett was one which fell within the legislative intendment of Code § 18.2-57.2, regardless of the "exact living circumstances of the victim and perpetrator." *Id.* (quoting *Williams*, 683 N.E.2d at 1129). Thus, the Commonwealth's evidence was sufficient to sustain Hackett's conviction for assault and battery of a family or household member, third or subsequent offense.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*